UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Civil Action No. _____3:20-cv-01301_____

JUSTIN L. KOCH, individually, and
behalf of all others similarly situated,

    Plaintiff,

v.

eFINANCIAL, LLC,

    Defendant.

_____/

## CLASS ACTION COMPLAINT

**NOW COMES** JUSTIN L. KOCH, individually, and behalf of all others similarly situated,

through his undersigned counsel, complaining of eFINANCIAL, LLC, as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action seeking redress for Defendant's violations of the

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

2.     "The primary purpose of the TCPA was to protect individuals from the harassment,

invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited,

automated calls." *Parchman v. SLM Corp.,* 896 F.3d 728, 738-39 (6th Cir. 2018) *citing* Telephone

Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

3.    As the Supreme Court recently observed, "Americans passionately disagree about

many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of*

*Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

1

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

5.      JUSTIN L. KOCH ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided in this federal jurisdiction.

6.      Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

7.      eFINANCIAL, LLC ("eFinancial") is a limited liability company organized and existing under the laws of Washington.

8.      eFinancial is an online life insurance provider that markets its life insurance products to consumers nationwide.

9.      eFinancial maintains its principal place of business at 13810 SE Eastgate Way, Suite 300, Bellevue, Washington 98005.

10.     eFinancial is a "person" as defined by 47 U.S.C. § 153(39).

## GENERAL ALLEGATIONS

11.     Upon information and belief, eFinancial develops marketing campaigns using a combination of sales channels, with an emphasis on outbound telemarketing.

12.     Upon information and belief, eFinancial utilizes third party vendors to market its insurance products.

13.     Upon information and belief, eFinancial's vendors are essential to the success of its telemarketing campaigns.

2

14.     Upon information and belief, eFinancial's ability to increase revenue depends significantly on their access to high-quality vendors.

15.     eFinancial is subject to liability under the TCPA for actions of its third party vendors who engage in outbound telemarketing efforts on its behalf.

16.     eFinancial's third party vendors identify themselves as representatives of "eFinancial."

17.     Upon information and belief, eFinancial's outbound telemarketing efforts include the use of telephone dialing systems ("ATDS") to solicit consumers nationwide.

18.     The Federal Trade Commission ("FTC") has held that a basic function of an ATDS is the ability to dial thousands of numbers in a short time period.

19.     The technology employed by eFinancial to place mass calls to consumers nationwide has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

20.     An ATDS allows its telemarketing agents to only communicate with consumers who answer eFinancial's phone calls.

21.     Consequently, eFinancial shifts the burden of wasted time to consumers with unsolicited calls and messages.

**FACTUAL ALLEGATIONS**

22.     At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the number ending in 9760.

23.     At all times relevant, Plaintiff's number ending in 9760 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

24.     At all times relevant, Plaintiff was financially responsible for his cellular telephone equipment and services.

25.     In October 2020, Plaintiff requested insurance quotes from an online insurance broker (not eFinancial).

26.     Immediately thereafter, Plaintiff started to receive phone calls from eFinancial.

27.     Upon answering eFinancial's phone calls, Plaintiff was met with a lengthy period of dead and was required to say "Hello" numerous times prior to being connected to eFinancial's representative.

28.     Uninterested in eFinancial's sales pitch, Plaintiff demanded that eFinancial cease its telemarketing calls.

29.     On November 3, 2020, Plaintiff received another telemarketing call from eFinancial.

30.     Plaintiff answered the call and again requested that the calls cease, this time requesting that eFinancial place him on the "Do Not Call" list.

31.     Despite Plaintiff's multiple requests that the calls cease, eFinancial continued to bombard Plaintiff with telemarketing calls.

32.     In early November 2020, Plaintiff visited eFinancial's website and sent eFinancial a written request to cease its calls through the website's "Contact Us" feature.

33.     Plaintiff's written request fell on blind eyes and eFinancial continued placing telemarketing calls to Plaintiff's cellular phone, including calls from the phone numbers (866) 388-3996 and (910) 920-9798.

4

34.     In the calls that Plaintiff did not answer, eFinancial left prerecorded messages on Plaintiff's cellular phone stating that "Chris Marshall" is responding to Plaintiff's request for life insurance coverage.

35.     In total, eFinancial has placed no less than forty (40) phone calls to Plaintiff's cellular phone number, from October 2020 through the present, utilizing a prerecorded voice and an ATDS without Plaintiff's consent.

36.     Plaintiff never provided his cellular phone number to eFinancial or otherwise provided eFinancial with consent to place calls to his cellular phone.

### DAMAGES

37.     eFinancial's pestering telemarketing calls have caused Plaintiff actual harm, including but not limited to, aggravation that accompanies persistent unwanted phone calls, anxiety, emotional distress, increased risk of personal injury resulting from the distraction caused by the telemarketing calls, wear and tear to Plaintiff's cellular phone, temporary loss of use of Plaintiff's cellular phone, invasion of privacy, loss of battery charge, loss of concentration, mental anguish, nuisance, the per-kilowatt electricity costs required to recharge Plaintiff's cellular telephone as a result of increased usage of Plaintiff's telephone services, and wasting Plaintiff's time.

38.     Moreover, each time eFinancial placed a telephone call to Plaintiff, eFinancial occupied Plaintiff's cellular phone such that Plaintiff was unable to receive other phone calls or otherwise utilize his cellular phone while his phone was ringing.

39.     Distressed by eFinancial's abusive telemarketing practices, Plaintiff was forced to retain counsel to compel eFinancial to cease its telemarketing calls.

## CLASS ALLEGATIONS

40.     Paragraphs 10 through 39 of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

41.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Classes") defined as follows:

### ATDS Class

All persons in the United States (1) to whom eFinancial placed, or caused to be placed, a phone call; (2) directed to a number assigned to a cellular telephone service; (3) using an automatic telephone dialing system; (4) without the prior express written consent of the called party; (5) within four years preceding the date of this compliant through the date of class certification.

### Prerecorded Message Class

All persons in the United States (1) to whom eFinancial placed, or caused to be placed, a phone call; (2) directed to a number assigned to a cellular telephone service; (3) using an artificial or prerecorded voice; (4) without the prior express written consent of the called party; (5) within the four years preceding the date of this complaint through the date of class certification.

42.     The following individuals are excluded from the Putative Classes: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) eFinancial, eFinancial's subsidiaries, parents, successors, predecessors, and any entity in which eFinancial or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against eFinancial  have been fully and finally adjudicated and/or released.

6

**A.      Numerosity**

43.     Upon information and belief, the members of the Putative Classes are so numerous that joinder of them is impracticable.

44.     The exact number of the members of the Putative Classes is unknown to Plaintiff at this time, and can only be determined through targeted discovery.

45.     The members of the Putative Classes are ascertainable because the Classes are defined by reference to objective criteria.

46.     The members of the Putative Classes are identifiable in that their names, addresses, and telephone numbers can be identified in business records maintained by eFinancial.

**B.      Commonality and Predominance**

47.     There are many questions of law and fact common to the claims of Plaintiff and the claims of the members of the Putative Classes.

48.     Those questions predominate over any questions that may affect individual members of the Putative Classes.

**C.      Typicality**

49.     Plaintiff's claims are typical of members of the Putative Classes because Plaintiff and members of the Putative Classes are entitled to damages as a result of eFinancial's conduct.

**D.      Superiority and Manageability**

50.     This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

51.     The damages suffered by the individual members of the Putative Classes will likely be relatively small, especially given the burden and expense required for individual prosecution.

52.     By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

53.     Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E.     Adequate Representation**

54.     Plaintiff will adequately and fairly represent and protect the interests of the Putative Classes.

55.     Plaintiff has no interests antagonistic to those of the members of the Putative Classes and eFinancial has no defenses unique to Plaintiff.

56.     Plaintiff has retained competent and experienced counsel in consumer class action litigation.

<u>**CLAIMS FOR RELIEF**</u>

**COUNT I:**
**Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq.*)**
**(On behalf of Plaintiff and the Members of TCPA Class)**

57.     Paragraphs 10 through 56 of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

58.     Among other things, the TCPA prohibits certain calls to wireless and residential numbers unless the caller has the prior express consent of the called party.   47 U.S.C. § 227(b)(1)(A).

59.     Under the TCPA consent rules, some types of calls require prior express written consent, while other types of calls do not require that the consent be in writing.

60.     "Prior express written consent" is required for (a) all telemarketing/promotional calls/texts made using an ATDS placed to wireless numbers, and (b) all artificial or prerecorded telemarketing/promotional voice calls to wireless and residential numbers.[1]

61.     The TCPA consent rules define "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an ATDS or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

62.     eFinancial placed or caused to be placed no less than forty (40) non-emergency solicitation/telemarketing calls, from October 2020 through the present, to Plaintiff's cellular telephone number ending in 9760 utilizing an ATDS, without Plaintiff's prior express written consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

63.     In the alternative, in the event eFinancial had Plaintiff's express written consent, that consent was revoked orally and in writing.

64.     Upon information and belief, based on the lengthy period of dead air that greeted Plaintiff upon answering eFinancial's calls, eFinancial employed an ATDS to place calls to Plaintiff's cellular telephone.

65.     Upon information and belief, the ATDS employed by eFinancial transfers the call to a live representative once a human voice is detected, hence the lengthy period of dead air prior to being connect to a live representative.

---

[1] 47 C.F.R. §§ 64.1200(a)(2) and (3).

66.     Upon information and belief, the system employed by eFinancial to place the calls to Plaintiff's cellular phone produced Plaintiff's telephone number using a random or sequential number generator as Plaintiff never provided his cellular phone number to eFinancial.

67.     Upon information and belief, the system employed by eFinancial to place phone calls to Plaintiff's cellular telephone has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

68.     Moreover, eFinancial violated § 227 (b)(1)(A)(iii) of the TCPA by placing or causing to be placed non-emergency calls, from October 2020 through the present, to Plaintiff's cellular telephone utilizing an artificial or prerecorded voice without Plaintiff's prior express written consent.

69.     As pled above, eFinancial used an artificial or prerecorded voice that automatically played upon the call reaching Plaintiff's voicemail.

70.     Upon information and belief, it is a systemic practice of eFinancial to call consumers without their prior express written consent; a practice designed to maximize profits at the expense of consumers.

71.     Upon information and belief, eFinancial does not maintain adequate procedures that effectively document consumers' requests that the calls cease, thus resulting in consumers receiving solicitation calls after they have requested that the solicitation calls cease.

72.     As a result of eFinancial's violations of the TCPA, Plaintiff and the members of the Putative Classes are entitled to receive $500.00 in damages for each such violation.

73.     As a result of eFinancial's knowing and willful violations of the TCPA, Plaintiff and the members of the Putative Classes are entitled to receive up to $1,500.00 in treble damages for each such violation.

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the Putative Classes, requests the following relief:

A.     an order granting certification of the proposed classes, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

B.     an order finding that Defendant violated the TCPA;

C.     an order enjoining Defendant from placing or causing to place further violating calls to consumers;

D.     an award  of $500.00 in damages to Plaintiff and the members of the Putative Classes for each such violation;

E.     an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Classes for each such violation; and

F.     an award of such other relief as this Court deems just and proper

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

11

Dated: November 17, 2020                    Respectfully submitted,

                                            **JUSTIN L. KOCH**

                                            By: _/s/ Alexander J. Taylor_

                                            Alexander J. Taylor, Esq.
                                            Florida Bar No. 1013947
                                            SULAIMAN LAW GROUP, LTD.
                                            2500 South Highland Avenue
                                            Suite 200
                                            Lombard, Illinois 60148
                                            (630) 575-8181
                                            ataylor@sulaimanlaw.com